ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

NOS. 13-1138 AND 13-1303 (CONSOLIDATED)
_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

AERA ENERGY, LLC, *ET AL.*

*Petitioners*

v.

FEDERAL ENERGY REGULATORY COMMISSION

*Respondent*
_____

On Petition for Review of Orders of the Federal Energy Regulatory Commission
_____

**BRIEF OF PETITIONER**
**KERN RIVER GAS TRANSMISSION COMPANY**
_____

J. Gregory Porter
Vice President and General Counsel
Darla S. Zink
Senior Counsel
Kern River Gas Transmission
Company
2755 E. Cottonwood Parkway
Suite 300
Salt Lake City, UT 84121
(402) 398-7248
greg.porter@nngco.com
darla.zink@nngco.com

James F. Moriarty
Thomas E. Knight
Jennifer Brough
Matthew T. Eggerding
Locke Lord LLP
701 8th Street NW, Suite 700
Washington, DC 20001
(202) 220-6915
jmoriarty@lockelord.com
tknight@lockelord.com
jbrough@lockelord.com
meggerding@lockelord.com

*Counsel for Petitioner Kern River Gas Transmission Company*

<u>**Certificate as to Parties, Rulings, and Related Cases**</u>

**A.     Parties and Amici**

**1.     Parties, Intervenors, and Amici before the Federal Energy Regulatory Commission**

The following is a list of all parties, intervenors, and amici who appeared before the Federal Energy Regulatory Commission ("FERC") in the underlying administrative proceedings:

Aera Energy LLC

Allegheny Energy Supply Company, LLC

Anadarko E&P Company LP

Anadarko Petroleum Corporation

Black Hills Energy, Inc.

BP Energy Company

BP America Inc.

Calpine Energy Services, L.P.

Chevron U.S.A. Inc.

Colorado Interstate Gas Company

Duke Energy Trading and Marketing, L.L.C.

Edison Mission Energy, Inc.

El Paso Merchant Energy, L.P.

El Paso Natural Gas Company

Federal Energy Regulatory Commission

Gas Transmission Northwest LLC

High Desert Power Trust

Kern River Gas Transmission Company

Mirant Americas Energy Marketing LP

Morgan Stanley Capital Group Inc.

Nevada Cogeneration Associates #1 and #2

Nevada Office of Attorney General

Nevada Power Company d/b/a NV Energy

Occidental Energy Marketing, Inc.

Pacific Gas and Electric Company

Pinnacle West Capital Corporation

Public Utilities Commission of Nevada

Questar Energy Trading Company

Questar Gas Company

RRI Energy, Inc.

San Diego Gas & Electric Company

Sempra Energy Trading Corp.

Seneca Resources Corporation

Shell Energy North America (U.S.), L.P.

Shell Oil Company

Shell Rocky Mountain Production LLC

Southern California Gas Company

Southern California Generation Coalition (consisting of the cities of Anaheim, Burbank, Glendale, and Pasadena, California; Imperial Irrigation District; JP Morgan Ventures Energy Corporation; and Los Angeles Department of Water and Power)

Southern Nevada Water Authority

Southwest Gas Corporation

Tenaska Marketing Ventures

Transwestern Pipeline Company, LLC

Utah Division of Public Utilities

Utah Public Service Commission

Williams Gas Marketing Company, Inc.

WPX Energy Marketing, LLC

## 2.    Parties, Intervenors, and Amici Before This Court

The following is a list of all parties, intervenors, and amici who appeared

before this Court:

Aera Energy LLC

Anadarko Energy Services Company and Anadarko E&P Onshore LLC

BP Energy Company

Chevron U.S.A. Inc.

Cross Timbers Energy Services, Inc.

Federal Energy Regulatory Commission

Occidental Energy Marketing, Inc.

San Diego Gas & Electric Company

Shell Energy North America (US), L.P.

Southern California Gas Company

Southwest Gas Corporation

SWEPI LP

Questar Gas Company

WPX Energy Marketing, LLC

**B.     Rulings Under Review**

The FERC orders under review in this consolidated case are:

1.     *Kern River Gas Transmission Company*, Opinion No. 486, Docket No. RP04-274-000, "Opinion and Order on Initial Decision," 117 FERC ¶ 61,077 (October 19, 2006);

2.     *Kern River Gas Transmission Company*, Opinion No. 486-A, Docket Nos. RP04-274-006 and 007, "Order on Rehearing Establishing Paper Hearing Procedures," 123 FERC ¶ 61,056 (April 18, 2008);

3.     *Kern River Gas Transmission Company*, Opinion No. 486-C, Docket Nos. RP04-274-15, *et al*., "Order on Rehearing and Compliance and Establishing Settlement Judge Procedures and a Hearing," 129 FERC ¶ 61,240 (December 17, 2009);

4.     *Kern River Gas Transmission Company*, Opinion No. 486-D, Docket Nos. RP04-274-020, *et al*., "Order on Rehearing and Compliance," 133 FERC ¶ 61,162 (November 18, 2010);

5.   *Kern River Gas Transmission Company*, Docket Nos. RP04-274-000, RP10-1406-000 and RP11-1499-000, "Order Granting Motion for Clarification," 133 FERC ¶ 61,199 (December 6, 2010);

6.   *Kern River Gas Transmission Company*, Opinion No. 486-E, Docket No. RP04-274-023, "Order on Initial Decision," 136 FERC ¶ 61,045 (July 21, 2011); and

7.   *Kern River Gas Transmission Company*, Opinion No. 486-F, Docket Nos. RP04-274-000, *et al*., "Order on Rehearing," 142 FERC ¶ 61,132 (February 22, 2013).

## C.   Related Cases

Timely petitions for review of Opinion Nos. 486, 486-A, 486-C, 486-D, and 486-E were filed with, and dismissed without prejudice by, this Court in Case Nos. 08-1168, 08-1215, 08-1219, 10-1032, 11-1010, and 11-1332.

On March 4, 2013, Kern River Gas Transmission Company ("Kern River") filed a petition for review with this Court in Case No. 13-1049.  On March 28, 2013, Kern River filed a motion to dismiss the petition for review without prejudice to it re-filing the petition for review once FERC issued an order on its request for rehearing of Opinion No. 486-F.  This Court granted the motion to dismiss on April 16, 2013.

On April 18, 2013, Aera Energy LLC, Anadarko E&P Onshore LLC (successor-in-interest to Anadarko E&P Company, LP), Chevron U.S.A. Inc., Occidental Energy Marketing, Inc., Shell Energy North America (US), L.P., and WPX Energy Marketing, LLC filed a joint petition for review with this Court in

v

Case No. 13-1138.  On June 7, 2013, this Court issued an order granting a consent motion to hold the case in abeyance pending FERC's order on Kern River's request for rehearing of Opinion No. 486-F.

On October 17, 2013, FERC issued Opinion No. 486-G, which was the order on rehearing of Opinion No. 486-F.  On December 13, 2013, Kern River timely filed the instant petition for review.

On January 24, 2014, this Court issued an order returning Case No. 13-1138 to this Court's active docket and consolidating Case Nos. 13-1138 and 13-1303.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Kern River Gas Transmission Company (Kern River) certifies the following:   Kern River is a general partnership organized and existing under the laws of the state of Texas, with its principal place of business at 2755 E. Cottonwood Parkway, Salt Lake City, Utah 84121.  Kern River is directly owned by KR Acquisition 1, LLC and KR Acquisition 2, LLC, each of which owns a 50 percent general partnership interest.  KR Acquisition 1, LLC and KR Acquisition 2, LLC are each 100 percent owned by KR Holdings, LLC which is 100 percent owned by Berkshire Hathaway Energy Company (formerly known as MidAmerican Energy Holdings Company), which has no publicly traded stock.  Berkshire Hathaway Inc., a publicly-held company, owns 89.8 percent of the common stock of Berkshire Hathaway Energy Company.

Kern River is an interstate natural gas pipeline company subject to the jurisdiction of FERC under the Natural Gas Act.  Kern River owns and operates a 1,717-mile interstate natural gas pipeline system extending from Opal, Wyoming, through the states of Utah and Nevada to California's San Joaquin Valley near Bakersfield, California.  Kern River, as an open-access transporter, utilizes its transmission system to provide natural gas transportation services to customers in the western United States.

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................................1

STATUTES AND REGULATIONS ...................................................................3

STATEMENT OF ISSUES ...............................................................................4

STATEMENT OF FACTS .................................................................................5

    A.    THE KERN RIVER SYSTEM ................................................5

    B.    INITIAL RATE DESIGN FOR THE KERN RIVER SYSTEM..........5

    C.    2002 EXPANSION AND THE ROLLED-IN RATE CREDIT FOR
          EXPANSION COSTS ...........................................................6

    D.    KERN RIVER RATE CASE ..................................................7

          1.    Opinion No. 486..............................................................8

          2.    Opinion No. 486-A ..........................................................8

          3.    Opinion No. 486-B ..........................................................9

          4.    Opinion No. 486-C ..........................................................9

          5.    Opinion No. 486-D ........................................................11

          6.    Opinion No. 486-E ........................................................13

          7.    Opinion No. 486-F ........................................................14

          8.    Opinion No. 486-G ........................................................14

SUMMARY OF ARGUMENT .........................................................................15

STANDING ..................................................................................................17

ARGUMENT ....................................................................................................18

    A.    STANDARD OF REVIEW ............................................................18

    B.    FERC ERRED BY MAKING THE PROSPECTIVE PERIOD ONE
            RATES EFFECTIVE ON DECEMBER 17, 2009, THE DATE OF
            ISSUANCE OF OPINION NO. 486-C, BECAUSE SUCH
            PROSPECTIVE RATES WERE NOT "FIXED" AS REQUIRED BY
            THE NGA UNTIL NOVEMBER 18, 2010, THE DATE OF
            ISSUANCE OF OPINION NO. 486-D.............................................19

            1.    FERC's Decision To Make The Period One Rates Effective As
                    Of December 17, 2009 Is Arbitrary, Capricious, An Abuse Of
                    Discretion, And Not In Accordance With Law .......................19

            2.    This Court Should Find That The Prospective Period One Rates
                    Are Effective As Of November 18, 2010, The Date Of Issuance
                    Of Opinion No. 486-D ............................................................32

    C.    FERC ERRED BY NOT ALLOWING KERN RIVER TO RESTATE
            THE PERIOD ONE RATES FOR THE ROLLED-IN 15-YEAR
            SHIPPERS WHEN THE 10-YEAR 2002 EXPANSION SHIPPERS
            STEPPED DOWN FROM PERIOD ONE RATES TO THE LOWER
            PERIOD TWO RATES....................................................................33

            1.    FERC's Complete Failure To Address Kern River's Request
                      For Rehearing On This Issue Is Arbitrary, Capricious, An
                    Abuse Of Discretion, And Not In Accordance With Law........33

                  a.    FERC Must Address Objections Raised........................33

                  b.    FERC Completely Ignored Kern River's Objection ......35

             2.    FERC Erred By Failing To Permit Kern River To Adjust The
                      Period One Rolled-In Rate Credit For The Rolled-In 15-Year
                    Shippers....................................................................................38

CONCLUSION ..............................................................................................46

## <u>TABLE OF AUTHORITIES</u>

## COURT CASES

*ANR Pipeline Co. v. FERC*, 863 F.2d 959 (D.C. Cir. 1988) ...................................42

*Atlantic Refining Co. v. Pub. Serv. Comm'n of State of N.Y.*,
    360 U.S. 378 (1959)...................................................................................20

*Bangor Hydro-Electric Co. v. FERC*, 78 F.3d 659 (D.C. Cir. 1996).....................18

\* *Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289
    (D.C. Cir. 2001) .....................................................................................33, 35

*City of Anaheim v. FERC*, 558 F.3d 521 (D.C. Cir. 2009)...............................28, 29

*Duquesne Light Co. v. Barasch*, 488 U.S. 299 (1989) ............................................41

\*Electrical District No. 1 v. FERC*, 774 F.2d 490
    (D.C. Cir. 1985) .......................................................................... 21-23, 26, 29

\* *FPC v. Hope Natural Gas Co.*, 320 U.S. 591 (1944)...............................41, 43, 45

*FPC v. Natural Gas Pipeline Co. of Am.*, 315 U.S. 575 (1942)..............................41

*In re Permian Basin Area Rate Cases*, 390 U.S. 747 (1968) ..................................41

*Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112
    (D.C. Cir. 2010) .........................................................................................18

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)................................................................................18, 33

*NorAm Gas Transmission Co. v. FERC*, 148 F.3d 1158 (D.C. Cir. 1998)..............34

*PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194
    (D.C. Cir. 2005) .....................................................................................33, 34

\* *PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203
    (D.C. Cir. 2011) ...................................................................................... 33-35

*Authorities upon which Kern River chiefly relies are marked with asterisks.

x

## COURT CASES (Continued)

*Pub. Serv. Co. of N.H. v. FERC*, 600 F.2d 944 (D.C. Cir. 1979) ...........................27

*Transcontinental Gas Pipe Line Corp. v. FPC*, 518 F.2d 459 (D.C. Cir. 1975).....41

*Transmission Agency of N. Cal. v. FERC*, 628 F.3d 538
    (D.C. Cir. 2010) .................................................................................33, 34, 38

*Transwestern Pipeline Co. v. FERC*, 897 F.2d 570 (D.C. Cir. 1990) ..............27, 28

*Wis. Valley Improvement Co. v. FERC*, 236 F.3d 738 (D.C. Cir. 2001)................18

## ADMINISTRATIVE CASES

*ANR Pipeline Co.*, 48 FERC ¶ 61,004 (1989) ........................................................42

*High Island Offshore System, L.L.C.*, 113 FERC ¶ 61,280 (2005).........................23

*Kern River Gas Transmission Co.*, 50 FERC ¶ 61,069 (1990) ............................5, 6

*Kern River Gas Transmission Co.*, 96 FERC ¶ 61,137 (2001) ...........................6, 7

*Kern River Gas Transmission Co.*, 107 FERC ¶ 61,215 (2004) ..............................7

*Kern River Gas Transmission Co.*, 109 FERC ¶ 61,060 (2004) ..............................7

*Kern River Gas Transmission Co.*, Opinion No. 486,
    117 FERC ¶ 61,077 (2006)...............................................................................8

*Kern River Gas Transmission Co.*, Opinion No. 486-A,
    123 FERC ¶ 61,056 (2008)............................................................................8, 9

*Kern River Gas Transmission Co.*, Opinion No. 486-B,
    126 FERC ¶ 61,034 (2009)...............................................................................9

*Kern River Gas Transmission Co.*, 127 FERC ¶ 61,033 (2009) ............................10

*Kern River Gas Transmission Co.*, Opinion No. 486-C,
    129 FERC ¶ 61,240 (2009)......................................... 9, 10, 11, 20, 22, 24, 25

*Kern River Gas Transmission Co.*, Opinion No. 486-D,
    133 FERC ¶ 61,162 (2010)................................. 11, 12, 19, 22-32, 35, 36, 43

xi

**ADMINISTRATIVE CASES (Continued)**

*Kern River Gas Transmission Co.*, Initial Decision,
  135 FERC ¶ 63,003 (2011)......................................................................13, 36

*Kern River Gas Transmission Co.*, Opinion No. 486-E,
  136 FERC ¶ 61,045 (2011)......................................................................13, 37

* *Kern River Gas Transmission Co.*, Opinion No. 486-F,
  142 FERC ¶ 61,132 (2013)..................................................................14, 37, 44

*Kern River Gas Transmission Co.*, Opinion No. 486-G,
  145 FERC ¶ 61,042 (2013).............................................................................14

*Williston Basin Interstate Pipeline Co.*, 69 FERC ¶ 61,360 (1994).......................29

*Pipeline Service Obligations and Revisions to Regulations Governing Self-Implementing Transportation Under Part 384 of the Commission's Regulations, Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol and Order Denying Rehearing in Part, Granting Rehearing in Part, and Clarifying Order No. 636*, Order No. 636-A, 57 Fed. Reg. 36128 (Aug. 12, 1992), FERC Statutes and Regulations ¶ 30,950 (Aug. 3, 1992)......................................................................................42

**STATUTES AND REGULATIONS**

U.S. CONST. amend. V.............................................................................................41

Administrative Procedure Act

  5 U.S.C. § 706(2)(A) (2006)...............................................................18, 46

Natural Gas Act

  15 U.S.C. § 717c (2006).............................................................1, 7, 12, 15

  15 U.S.C. § 717d (2006)..............................................12, 15, 19-24, 29-32

  15 U.S.C. § 717r(b) (2006)................................................................................1

**STATUTES AND REGULATIONS (Continued)**

18 C.F.R. § 154.203(b) (2014)..................................................................24

**OTHER AUTHORITIES**

Webster's New World Dictionary (3d ed. 1994).....................................22

# <u>GLOSSARY</u>

| | |
|---|---|
| 2002 Expansion Shippers | Shippers utilizing the 2002 Expansion transportation service |
| 2011 Initial Decision | Initial Decision issued April 14, 2011 by FERC presiding administrative law judge. *Kern River Gas Transmission Co.*, 135 FERC ¶ 63,003 (2011), R. 1796, JA __ |
| Commission or FERC | Federal Energy Regulatory Commission |
| JA | Joint Appendix |
| Kern River | Kern River Gas Transmission Company |
| March 2, 2009 Compliance Filing | Compliance filing submitted by Kern River on March 2, 2009 (R. 1201, JA __) as revised by compliance filings submitted March 27, 2009 (R. 1230, JA __) and September 27, 2009 (R. 1248, JA __) |
| NGA | Natural Gas Act, 15 U.S.C. § 717 *et seq.* (2006) |
| NGA section 4 | Section 4 of the NGA, 15 U.S.C. § 717c (2006) |
| NGA section 5 | Section 5 of the NGA, 15 U.S.C. § 717d (2006) |
| Opinion No. 486-C | *Kern River Gas Transmission Co.*, 129 FERC ¶ 61,240 (2009), R. 1165, JA __ |
| Opinion No. 486-D | *Kern River Gas Transmission Co.*, 133 FERC ¶ 61,162 (2010), R. 1280, JA __ |
| Opinion No. 486-E | *Kern River Gas Transmission Co.*, 136 FERC ¶ 61,045 (2011), R. 1818, JA __ |
| Opinion No. 486-F | *Kern River Gas Transmission Co.*, 142 FERC ¶ 61,132 (2013), R. 1875, JA __ |
| Original System Shippers | Shippers utilizing the Kern River system prior to the 2002 Expansion |

| | |
|---|---|
| P | Paragraph of FERC order |
| Period One | The term of the system's initial service, the rates of which were designed to recover 70% of the system's capital costs |
| Period Two | The term of the system service after the expiration of Period One, the rates of which were designed to recover the remaining 30% of the system's capital costs |
| Period Three | The term of the system service after Period Two |
| R. | Record |
| Rolled-In Rate Credit | Rate credit based upon the revenues Kern River receives from 2002 Expansion service in excess of the 2002 Expansion cost of service that Kern River applies to the transportation rates for all rolled-in shippers (i.e., Original System Shippers and 2002 Expansion Shippers), which reduces the transportation rates for all rolled-in shippers |

## JURISDICTIONAL STATEMENT

FERC had subject matter jurisdiction under 15 U.S.C. § 717c.  This Court

has jurisdiction pursuant to 15 U.S.C. § 717r(b).

Multiple parties submitted various requests for rehearing to FERC of the

orders under review in this consolidated case.  For the purposes of the instant

Brief, Kern River filed a request for rehearing of Opinion No. 486-C on January

19, 2010 in Docket No. RP04-274-020.  FERC denied this request for rehearing in

Opinion No. 486-D issued November 18, 2010.  Kern River then filed a petition

for review in this Court on January 14, 2011 in Case No. 11-1010.  Kern River

filed a motion to dismiss the case voluntarily pending the completion of the FERC

proceedings.  On February 24, 2011, this Court granted Kern River's motion to

dismiss the case without prejudice.

Thereafter, on July 21, 2011, FERC issued Opinion No. 486-E.  Kern River

filed a request for rehearing of Opinion No. 486-E on August 22, 2011 in Docket

No. RP04-274-029.  FERC denied this request for rehearing in Opinion No. 486-F

issued February 22, 2013.  Kern River filed a request for clarification or rehearing

of Opinion No. 486-F on March 25, 2013 in Docket No. RP04-274-030.

As noted in the Certificate of Parties, Rulings, and Related Cases, following

the issuance of Opinion No. 486-F, Kern River filed a petition for review with this

Court in Case No. 13-1049.  On March 28, 2013, Kern River filed a motion to

dismiss the petition for review without prejudice to it re-filing the petition for review once FERC issued an order on its request for rehearing of Opinion No. 486-F.  On October 17, 2013, FERC issued Opinion No. 486-G addressing the narrow issue raised in Kern River's request for rehearing of Opinion No. 486-F.

The orders under review are final orders.  On December 13, 2013, Kern River timely filed a petition for review with this Court in Case No. 13-1303.

## **STATUTES AND REGULATIONS**

The relevant statutory provisions are reproduced in the Statutory Addendum attached hereto in the Appendix.

## STATEMENT OF ISSUES

1.    Whether FERC erred by making the prospective Period One rates
      effective on December 17, 2009, the date of issuance of Opinion No.
      486-C, because such prospective rates were not "fixed" as required by
      the Natural Gas Act ("NGA") until November 18, 2010, the date of
      issuance of Opinion No. 486-D.

2.    Whether FERC erred by not allowing Kern River to restate the Period
      One rates for the rolled-in 15-year shippers when the 10-year 2002
      Expansion Shippers stepped down from Period One rates to the lower
      Period Two rates.

## STATEMENT OF FACTS

**A.     THE KERN RIVER SYSTEM**

Kern River is an interstate natural gas pipeline company subject to the jurisdiction of FERC under the NGA.  Kern River owns and operates a 1,717-mile interstate natural gas pipeline system extending from Opal, Wyoming, through the states of Utah and Nevada to California's San Joaquin Valley near Bakersfield, California.  Kern River, as an open-access transporter, utilizes its transmission system to provide natural gas transportation services to customers in the western United States.

**B.     INITIAL RATE DESIGN FOR THE KERN RIVER SYSTEM**

FERC issued a certificate for Kern River to construct its original system in 1990.  *Kern River Gas Transmission Co*., 50 FERC ¶ 61,069 at 61,150 (1990).  In that order, FERC approved initial rates based on, among other things, a levelized cost of service and a 25-year depreciable life.  *Id*.  FERC authorized Kern River to charge separate rates for three different time periods (i.e., "levelized rates"):  (1) the term of the system's initial service, the rates of which were designed to recover 70% of the system's capital costs ("Period One"); (2) the term of the system service after the expiration of Period One, the rates of which were designed to recover the remaining 30% of the system's capital costs ("Period Two"); and (3) the term of the system service after Period Two ("Period Three").  *See generally*

*id*. Because the Period One rates allowed Kern River to recover more invested capital during Period One than Kern River would under ordinary straight-line depreciation for the depreciable life of the system, the rates for the subsequent two periods would be lower than the Period One rates. *See id*. at 61,150-51.

## C.    2002 EXPANSION AND THE ROLLED-IN RATE CREDIT FOR EXPANSION COSTS

In 2002, Kern River added additional compression to increase the capacity of the system ("2002 Expansion"). *Kern River Gas Transmission Co.*, 96 FERC ¶ 61,137 at 61,592 (2001). In lieu of having separate incremental transportation rates for the service provided by the 2002 Expansion facilities, Kern River proposed to roll the costs of the 2002 Expansion into its existing transportation rates. Kern River was not able to use a typical roll-in methodology due to the system's levelized rate design. Under the levelized rate design, the contracts held by the shippers utilizing the Kern River system prior to the 2002 Expansion ("Original System Shippers") had different expiration dates than the contracts held by the shippers utilizing the new 2002 Expansion service ("2002 Expansion Shippers").

To account for this difference, Kern River proposed a rate credit to the transportation rate of all rolled-in shippers (Original System Shippers and 2002 Expansion Shippers). Using the methodology proposed in Exhibit P of its 2002 Expansion filing, Kern River would (1) determine the revenues it receives from the

2002 Expansion Shippers in excess of the 2002 Expansion cost of service, (2) calculate a credit to the rates of all rolled-in shippers (Original System Shippers and 2002 Expansion Shippers) based upon the excess revenue, and then (3) apply that rate credit to the transportation rates for all rolled-in shippers ("Rolled-In Rate Credit").  Accordingly, the Rolled-In Rate Credit would reduce the overall transportation rates for the Original System Shippers and the 2002 Expansion Shippers.  FERC approved Kern River's methodology and authorized the roll-in of the 2002 Expansion project costs with the original system costs.  *Id*. at 61,582.  Kern River has consistently used the same FERC-approved roll-in methodology since that time.

**D.    KERN RIVER RATE CASE**

On April 30, 2004, Kern River filed a general rate case under NGA section 4.  Kern River proposed, among other things, to continue its levelized rate methodology approved by FERC in the certificate to construct the original system.  FERC accepted and suspended Kern River's proposed rates subject to refund, conditions, and hearing.  *Kern River Gas Transmission Co.*, 107 FERC ¶ 61,215, *order on reh'g*, 109 FERC ¶ 61,060 (2004), JA __.  Between 2006 and 2013, FERC issued eight opinions in the rate case proceeding.  The main points of these opinions, as relevant to Kern River's appeal, are summarized below.

### 1.      Opinion No. 486

On October 19, 2006, after a hearing and the issuance of an initial decision by an Administrative Law Judge, FERC issued its first opinion in the Kern River rate case.  FERC generally affirmed the findings of the Administrative Law Judge, including Kern River's proposal to continue its levelized rate methodology for Period One rates.  FERC, however, reversed several findings of the initial decision. First, FERC determined that Kern River's return on equity should be set at 11.2 percent instead of the 9.34 percent adopted by the Administrative Law Judge. *Kern River Gas Transmission Co.*, Opinion No. 486, 117 FERC ¶ 61,077 at P 2 (2006), R. 776, JA __.  FERC reversed the Administrative Law Judge's rejection of Kern River's proposal to use a weighted average cost of debt in designing rates for all groups of shippers on its system and reversed the Administrative Law Judge's denial of a corporate tax allowance.  *Id*. at P 3, JA __.  FERC also ordered Kern River to include in its tariff the Period Two step-down rates that would take effect upon expiration of the shippers' current contracts.  *Id*.

### 2.      Opinion No. 486-A

On April 18, 2008, FERC issued Opinion No. 486-A in response to the requests for rehearing of Opinion No. 486.  *Kern River Gas Transmission Co.*, Opinion No. 486-A, 123 FERC ¶ 61,056 (2008), R. 1060, JA __.  In Opinion No. 486-A, FERC generally denied the requests for rehearing, except for the issue of

whether master limited partnerships should be included in the composition of a proxy group in calculating Kern River's return on equity.  *Id*. at P 1, JA __.  FERC established paper hearing procedures to allow parties an opportunity to submit evidence on this issue.  *Id*. at P 8, JA __.

### 3.    Opinion No. 486-B

On January 15, 2009, FERC issued Opinion No. 486-B to address the issues raised in the paper hearing on return on equity and also to address a contested settlement filed by Kern River in 2008.  *Kern River Gas Transmission Co.*, Opinion No. 486-B, 126 FERC ¶ 61,034 (2009), R. 1135, JA __.  FERC rejected the proposed settlement because it found that the 12.50 percent return on equity contained in the settlement rendered the rates unjust and unreasonable.  *Id*. at P 192, JA __.  Taking into account FERC's new policy on including master limited partnerships in the composition of proxy groups, FERC held that Kern River's return on equity should be 11.55 percent.  *Id*.  FERC also ordered Kern River to cancel the interim rates that it had filed with the settlement and to make a revised compliance filing using a return on equity of 11.55 percent to design its rates.  *Id*.

### 4.    Opinion No. 486-C

On January 30, 2009, Kern River made a filing to comply with FERC's directives in Opinion No. 486-B related to the rejection of the settlement.  *See Kern River Gas Transmission Co.*, Opinion No. 486-C, 129 FERC ¶ 61,240 at

P 119 (2009) ("Opinion No. 486-C"), R. 1165, JA __.  FERC accepted this

compliance filing in an order dated April 10, 2009.  *Id*. at P 120, JA __; *see also*

*Kern River Gas Transmission Co*., 127 FERC ¶ 61,033 at P 1 (2009), R. 1147,

JA __.

    On March 2, 2009, Kern River made a compliance filing to revise its rates to

reflect an 11.55 percent return on equity and FERC's other holdings in Opinion

No. 486-B.  *See* Opinion No. 486-C at P 119, R. 1165, JA __.  On March 27, 2009

and September 22, 2009, Kern River made additional compliance filings to correct

certain errors in the March 2, 2009 compliance filing.[1]  *Id*.

    On December 17, 2009, FERC issued Opinion No. 486-C where it accepted,

"subject to conditions," the March 2, 2009 Compliance Filing as it applied to the

prospective Period One rates.  *Id.* at PP 2, 120, JA __.  FERC ordered Kern River

to recalculate the prospective Period One rates in an additional compliance filing to

be made within 45 days of the date of Opinion No. 486-C.  *Id.* at Ordering

Paragraph (C) , JA __.  FERC further held that "[t]he tariff sheets establishing the

prospective Period One Rates will be effective the date of the issuance of this order

[i.e., December 17, 2009]."  *Id.* at P 14, JA __.

---

[1] Kern River's March 2, 2009 compliance filing (R. 1201, JA __), as revised by the
March 27, 2009 (R. 1230, JA __) and September 22, 2009 (R. 1248, JA __)
compliance filings, is referred to herein as the "March 2, 2009 Compliance Filing."

FERC rejected the portion of the March 2, 2009 Compliance Filing that set forth the proposed Period Two rates and required Kern River to file revised *pro forma* Period Two tariff sheets deriving levelized Period Two rates. *Id*. Finally, FERC established another hearing to consider issues related to the Period Two rates. *Id*.

### 5.    Opinion No. 486-D

On January 19, 2010, Kern River filed a request for rehearing of Opinion No. 486-C arguing, among other things, that FERC erred in making the Period One rates effective on December 17, 2009 (the date of Opinion No. 486-C) when the rates had not been "fixed" by FERC as of that date due to FERC's order requiring Kern River to recalculate the Period One rates in a subsequent compliance filing. *See* R. 1278, JA __.

On January 29, 2010, Kern River submitted a 298-page compliance filing, as ordered by FERC in Opinion No. 486-C, setting out the recalculated prospective Period One rates. R. 1283, JA __. On November 18, 2010, FERC issued Opinion No. 486-D in which it "discuss[ed] all pending issues related to Kern River's Period One Rates." *Kern River Gas Transmission Co.*, Opinion No. 486-D, 133 FERC ¶ 61,162 at P 13 (2010) ("Opinion No. 486-D"), R. 1280, JA __. FERC accepted Kern River's January 29, 2010 compliance filing and denied its request for rehearing. *Id.* at PP 31, 100, JA __. In denying Kern River's request for

11

rehearing, FERC held, among other things, that its precedent did not bar the prospective Period One rates from going into effect on December 17, 2009, the date of Opinion No. 486-C.  *See id.* at P 31, JA __.

In Opinion No. 486-D, FERC also clarified that the hearing established under Opinion No. 486-C regarding the Period Two rates would be pursuant to NGA section 5, not NGA section 4.  *Id*. at PP 109-10, JA __.  FERC further clarified the issues set for hearing regarding Kern River's Period Two rates as follows:

> The Commission continues to find that the starting point for calculating the Period Two rates in this proceeding must be the cost of service we have already determined for Period One based upon the 2004 test year data used in this section 4 rate case. . . .  The only exception to this general approach to developing Kern River's Period Two rates is where there are *circumstances unique to the transition from Period One to Period Two rates that justify an adjustment to the cost of service underlying the Period One rates*.

*Id*. at PP 193-94 (emphasis added) , JA __; *see also id*. at P 202, JA __.  FERC provided examples of such "circumstances unique to the transition," including, but not limited to, depreciation, capital structure, return on equity, and billing determinants.  *Id*. at PP 194-96, 198, JA __.

12

### 6.     Opinion No. 486-E

As ordered by Opinion No. 486-C, a hearing on Period Two rates was held at FERC before an Administrative Law Judge.  Kern River submitted testimony and exhibits at the hearing on various issues, including the issue of the Rolled-In Rate Credit for the transition from Period One to Period Two rates.  In the initial decision issued April 14, 2011 ("2011 Initial Decision"), the Administrative Law Judge stated that the issue of whether the Period One rates should be adjusted to account for the Rolled-In Rate Credit during the transition was not part of the proceeding.  *Kern River Gas Transmission Co.*, Initial Decision, 135 FERC ¶ 63,003 at P 346 (2011) ("Finally, Issue H involves whether Period One rates should be adjusted to account for reduction in the 2002 Expansion roll-in credit due to Period Two step-down rates.  The undersigned finds this issue is not part of this proceeding.  Period One rates were finalized by Opinion 486-D."), R. 1796, JA __.

On July 21, 2011, FERC issued Opinion No. 486-E affirming the 2011 Initial Decision on various issues.  *Kern River Gas Transmission Co.*, Opinion No. 486-E, 136 FERC ¶ 61,045 (2011) ("Opinion No. 486-E"), R. 1818, JA __.  FERC did not address the Rolled-In Rate Credit arguments made in Kern River's Brief on Exceptions.  On August 22, 2011, Kern River filed a request for rehearing of Opinion No. 486-E regarding the Rolled-In Rate Credit issue.  R. 1857 at 50-52.

13

### 7.    Opinion No. 486-F

In Opinion No. 486-F, FERC generally denied rehearing of Opinion No.

486-E.  *Kern River Gas Transmission Co.*, Opinion No. 486-F, 142 FERC ¶ 61,132

at P 2 (2013) ("Opinion No. 486-F"), R. 1875, JA __.  FERC did not acknowledge

or address Kern River's rehearing arguments regarding the Rolled-In Rate Credit

issue.

### 8.    Opinion No. 486-G

On October 17, 2013, FERC issued Opinion No. 486-G in which it

addressed Kern River's request for clarification on the narrow issue of the recovery

of Kern River's compressor engine and general plant costs.  *Kern River Gas*

*Transmission Co.*, Opinion No. 486-G, 145 FERC ¶ 61,042 at P 1 (2013).  No

party sought rehearing or review of Opinion No. 486-G.

14

## SUMMARY OF ARGUMENT

Kern River filed its general rate case pursuant to NGA section 4 over ten years ago, which was the subject of eight opinions by FERC.  Out of these eight opinions, Kern River raises only two issues on appeal: (1) whether FERC erred by making the prospective Period One rates effective on December 17, 2009, the date of issuance of Opinion No. 486-C; and (2) whether FERC erred by not allowing Kern River to restate the Period One rates for the rolled-in 15-year shippers following a change in rate derivation for the Period Two rates as ordered by FERC.

With respect to the effective date of the Period One rates, this Court's task here is straightforward: determine the date on which FERC "fixed" the Period One rates within the meaning of NGA section 5.  As explained herein, both the plain language of NGA section 5 and this Court's precedent dictate that FERC did not fix the prospective Period One rates until November 18, 2010, when it issued an order accepting Kern River's compliance filing containing the recalculated prospective Period One rates.

With respect to the second issue, procedurally, FERC completely failed to address the Rolled-In Rate Credit issue raised by Kern River in its request for rehearing.  Pursuant to this Court's precedent, such a failure alone is sufficient for this Court to remand the issue to FERC for further proceedings.  FERC also erred substantively when it failed to allow Kern River to recover its prudently-incurred

costs for Period One while allowing such recovery for Period Two by adjusting the

Rolled-In Rate Credit.

## STANDING

The orders under review affect the rates that Kern River, an interstate pipeline subject to FERC's jurisdiction under the NGA, charges for transportation services.  Kern River has suffered injury-in-fact directly caused by the orders, which would be redressed by a favorable ruling from this Court.

# ARGUMENT

## A.    STANDARD OF REVIEW

Under the Administrative Procedure Act, FERC's orders must be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A) (2006).  This Court reviews "whether the agency's policy choice is supported by 'substantial evidence,' and 'whether there is a rational connection between the facts and the choice made.'"  *Wis. Valley Improvement Co. v. FERC*, 236 F.3d 738, 745 (D.C. Cir. 2001) (*citing Bangor Hydro-Electric Co. v. FERC*, 78 F.3d 659, 663 n.3 (D.C. Cir. 1996)); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*").  In addition, "the agency's explanation for its decision must be 'sufficient to enable [this Court] to conclude that [it] was the product of reasoned decisionmaking.'"  *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1118 (D.C. Cir. 2010) (*quoting State Farm*, 463 U.S. at 52).

18

**B.      FERC ERRED BY MAKING THE PROSPECTIVE PERIOD ONE RATES EFFECTIVE ON DECEMBER 17, 2009, THE DATE OF ISSUANCE OF OPINION NO. 486-C, BECAUSE SUCH PROSPECTIVE RATES WERE NOT "FIXED" AS REQUIRED BY THE NGA UNTIL NOVEMBER 18, 2010, THE DATE OF ISSUANCE OF OPINION NO. 486-D**

**1.      FERC's Decision To Make The Period One Rates Effective As Of December 17, 2009 Is Arbitrary, Capricious, An Abuse Of Discretion, And Not In Accordance With Law**

In Opinion No. 486-C, FERC purportedly accepted Kern River's March 2, 2009 Compliance Filing while making it nevertheless subject to conditions, including recalculating the prospective Period One rates in a subsequent compliance filing.  The Period One rates were not fixed as required by NGA section 5 until November 18, 2010, the date of issuance of Opinion No. 486-D, when FERC accepted Kern River's compliance filing after directing Kern River to recalculate the prospective Period One rates.

FERC clarified in Opinion No. 486-D that it was acting under NGA section 5 when setting the prospective Period One rates.  *See, e.g.*, Opinion No. 486-D at P 28 ("[T]he Commission's decision in Opinion No. 486-C was well within its NGA section 5 authority to fix rates to be effective prospectively from the date of that order."), R. 1280, JA __.  NGA section 5 requires two distinct elements: (1) that FERC shall find the existing rate to be unjust or unreasonable, and (2) that "the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in

19

force, and *shall fix the same by order*[.]" 15 U.S.C. § 717d(a) (2006) (emphasis

added). This new rate is only applied on a prospective basis. *See, e.g.*, *Atlantic*

*Ref. Co. v. Pub. Serv. Comm'n of State of N.Y.*, 360 U.S. 378, 389 (1959) ("Under

[NGA section 5], however, the rate found by the Commission to be just and

reasonable becomes effective prospectively only.").

In Opinion No. 486-C, FERC accepted Kern River's March 2, 2009

Compliance Filing but found that the manner in which Kern River calculated the

prospective Period One rates contained therein was unjust and unreasonable.

Opinion No. 486-C at P 167, R. 1165, JA __. In particular, FERC found "that it is

unjust and unreasonable for Kern River to use different reservation billing

determinants for allocating costs between the 10-year and 15-year Rolled-in

System shippers and for calculating the per-unit rates for the same shippers." *Id*.

Despite finding such specific infirmities, FERC accepted the March 2, 2009

Compliance Filing but ordered material corrections to be made that required Kern

River to calculate new rates. Clearly, if FERC had rejected the March 2, 2009

Compliance Filing and the rates contained therein, then there would have been no

rates to put into effect as of December 17, 2009, the date of issuance of Opinion

No. 486-C. Rejecting the manner in which Kern River calculated the rates and

requiring a substantively new compliance filing does not fulfill FERC's obligation

to fix the rates under NGA section 5.

Due to the complexity of deriving levelized rates, it is impossible to know the ultimate derived rates until all rate models have been rerun with the changed components. Therefore, pursuant to the plain language of Opinion No. 486-C, it is impossible for the rates in the March 2, 2009 Compliance Filing to meet the NGA section 5 requirement that the just and reasonable rate be fixed.

In *Electrical District No. 1 v. FERC*, this Court determined what it means for FERC to "fix" a new rate and when the new rate becomes effective. 774 F.2d 490 (D.C. Cir. 1985) ("*Electrical District*"). In that case, FERC made a new rate effective as of the date FERC ordered the company to make a compliance filing and not as of the date FERC accepted the compliance filing.

This Court reversed FERC, stating that "[i]t is uncontested (and uncontestable) that under current FERC practice no numerical rate is specified until after the compliance filing is accepted." *Id*. at 492. This Court rejected FERC's assertion that in order to "fix" a rate, "it is enough to prescribe the legal and accounting principles, which, properly applied, will yield one particular rate[.]" *Id*. Instead, this Court accepted the petitioners' argument that "the statute means what it says, and requires the rate itself to be specified." *Id.*

This Court held that the FERC's "new policy of making rates effective as of the date of an order setting forth no more than the basic principles pursuant to which the new rates are to be calculated would make unforeseeable liabilities a

21

regular consequence of rate adjustments[.]" *Id.* at 493.  This Court noted that as an

alternative to making the rate effective as of the date of the order accepting the

compliance filing, FERC could fix the new rate itself in its initial order.  *Id.* at 494.

FERC's decision to make the prospective Period One rates effective as of

the date of Opinion No. 486-C is contrary to the plain language of NGA section 5

and the controlling precedent of this Court.  FERC did not fix a rate in Opinion No.

486-C, but instead required Kern River to recalculate its prospective Period One

rates.  Specifically, Kern River was required to apply, retroactively to November 1,

2004, FERC's earlier ruling eliminating the 95 percent load factor rate design for

its Original System Shippers and, instead, to derive certain shippers' rates using

actual (i.e., 100 percent load factor) reservation quantities, including seasonal

contract determinants.  Opinion No. 486-C at P 158, R. 1165, JA __.

According to Webster's Dictionary, the word "fix" means "to arrange or

establish definitely" and "to determine with certainty."  *See* Webster's New World

Dictionary 511 (3d ed. 1994).  Undoubtedly, FERC did not establish or determine

a just and reasonable rate in Opinion No. 486-C.  If a rate had been fixed in

Opinion No. 486-C, there would have been no reason for FERC to order Kern

River to submit another compliance filing with recalculated rates, which FERC did

not accept until November 18, 2010, in Opinion No. 486-D.  It was not until

22

November 18, 2010 that FERC had finally established definitely, or determined with certainty, the just and reasonable prospective Period One rates.

In Opinion No. 486-D, FERC reviewed Kern River's request for rehearing on this issue and admitted that, subsequent to *Electrical District*, "the Commission's general practice in determining the effective date of rate changes ordered pursuant to NGA section 5 has been to follow the approach suggested by the court in that case."  Opinion No. 486-D at P 22, R. 1280, JA __; *see also High Island Offshore System, L.L.C.*, 113 FERC ¶ 61,280 at P 26 (2005).  Specifically, "the Commission either calculates the new just and reasonable rate itself, or orders the pipeline to calculate the revised rate in its compliance filing."  Opinion No. 486-D at P 22, R. 1280, JA __.

FERC went on to state that in the event that FERC orders the pipeline to make a compliance filing, "the Commission makes the [NGA] section 5 rate change effective on the date the Commission issues an order accepting the pipeline's initial compliance filing, thereby 'fixing' the new just and reasonable rate."  *Id.*     After stating the applicable precedent, FERC then attempted to rescue its improper decision by asserting that "Opinion No. 486-C was the order where the Commission accepted Kern River's compliance filing" because FERC accepted Kern River's March 2, 2009 Compliance Filing.  *Id*. at P 24, JA __.

However, as explained above, FERC found in Opinion No. 486-C that the March 2, 2009 Compliance Filing produced unjust and unreasonable rates and accepted it *subject to conditions*. Opinion No. 486-C at P 167, R. 1165, JA __. It was in Opinion No. 486-C that FERC, for the first time, found that it was unjust and unreasonable for Kern River to use the billing determinants of 624,416 decatherms to allocate costs between the 10-year and 15-year rolled-in system shippers. Opinion No. 486-C at P 167, R. 1165, JA __.

FERC incorrectly criticized Kern River for changing the level of billing determinants it used in allocating costs in the March 2, 2009 Compliance Filing. *See id*. at P 170 ("Thus, it was improper for Kern River in its March 2, 2009 compliance filing to lower the amount it previously used for cost allocation in the Original Rate Case Filing."), R. 1165, JA __. Although FERC mistakenly believed Kern River changed its methodology in a compliance filing, FERC nonetheless accepted the compliance filing despite Kern River's alleged violation of FERC's own regulation that forbids making changes in a compliance filing other than those required by FERC in the underlying order. *See* 18 C.F.R. § 154.203(b) (2014).

In actuality, Kern River had used the same billing determinants (624,416 decatherms) to allocate such costs in its original rate case filing and throughout the entire rate case proceeding, including the March 2, 2009 Compliance Filing. In Opinion No. 486-D, FERC admitted that it was mistaken in Opinion No. 486-C

24

and that Kern River did not change its methodology for allocating costs between

the 10-year and 15-year rolled-in system shippers.  Opinion No. 486-D at P 78

("[T]he Commission's original understanding of Kern River's filing . . . was

incorrect."), R. 1280, JA __.  FERC noted that Kern River had used the 624,416

decatherm billing determinant level to allocate costs in its original rate filing on

April 30, 2004 and then in four subsequent filings: (1) December 15, 2004 45-day

update filing; (2) December 18, 2006 compliance filing; (3) March 2, 2009

compliance filing; and (4) September 22, 2009 compliance filing.  *Id*.  Neither

FERC nor any shippers objected to the use of the 624,416 decatherm billing

determinants to allocate costs until Kern River filed the March 2, 2009 Compliance

Filing.

      Only in Opinion No. 486-C did FERC decide that the use of the billing

determinants of 624,416 decatherms for cost allocation was unjust and

unreasonable.  As a result, FERC ordered Kern River to completely recalculate the

prospective Period One rates.  Before this FERC ruling, neither Kern River nor the

shippers were put on notice that the cost allocation proposed in Kern River's

original rate case filing, nearly six years prior to Opinion No. 486-C, and repeated

consistently in at least four subsequent compliance filings, was unjust and

unreasonable.  *Id*. at P 78.  It is clear in Opinion No. 486-C that there was not the

required rate certainty necessary to establish just and reasonable rates as of the date

of issuance of that order.  As this Court held in *Electrical District*, "[p]roviding the necessary predictability is the whole purpose of the well established 'filed rate' doctrine[.]"  *Electrical District*, 774 F.2d at 493.

In Opinion No. 486-D, FERC claimed that the rates were fixed by Opinion No. 486-C because "the changes the Commission ordered in Opinion No. 486-C were limited."  Opinion No. 486-D at P 25, R. 1280, JA __.  FERC claimed that, to calculate the new Period One rates, Kern River simply had to substitute one number for another.  *Id.*  If that claim was accurate, then, consistent with this Court's suggestion in *Electrical District*, FERC could have "fixed" the rate itself by setting out the actual rates in Opinion No. 486-C.  The fact that FERC did not do so and instead ordered Kern River to submit a compliance filing 45 days later indicates that, in reality, the recalculations required by Kern River to produce new rates were not so simple.

To recalculate the prospective Period One rates in accordance with Opinion No. 486-C for all of Kern River's various shipper groups, Kern River prepared the 298-page January 29, 2010 compliance filing by modifying a total of thirty-six rate files, eight of which are rate models that calculate the actual rates.  *See* R. 1283 at Appendix D, JA __.  Because Opinion No. 486-C required Kern River to change the billing determinants, other elements of the thirty-six rate files were impacted, including regulatory depreciation and the allocation of market oriented revenue.

26

The market oriented revenue, in turn, affected the rates for the following groups of shippers: (1) Original System Shippers with 10-year contracts; (2) Original System Shippers with 15-year contracts; (3) shippers with 10-year contracts related to a 2003 Kern River system expansion; and (4) shippers with 15-year contracts related to a 2003 Kern River system expansion.  *See id*. at Appendix D, Work Paper, Page 7, JA __.

Due to the complexity of deriving these levelized rates, no party (not Kern River, FERC, nor any shipper) knew the effective prospective Period One rates until all levelized rate models had been rerun with the changed components and accepted by FERC.  FERC took nearly ten months following Kern River's submittal of the January 29, 2010 compliance filing before it accepted the compliance filing with the recalculated rates in Opinion No. 486-D.

In denying Kern River's request for rehearing on this issue in Opinion No. 486-D, FERC ignored the complexities inherent in recalculating the prospective Period One rates.  FERC stated that this Court established in *Transwestern Pipeline Company v. FERC*, that, in lieu of determining specific, absolute rate numbers, FERC "may approve a tariff containing a rate 'formula' or rate 'rule'[.]"  *See* Opinion No. 486-D at P 28 (*citing Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 578 (D.C. Cir. 1990) ("*Transwestern*")); *see also Pub. Serv. Co. of N.H. v. FERC*, 600 F.2d 944 (D.C. Cir. 1979).  However, the facts of *Transwestern* are

27

in no way analogous to the facts here.  In *Transwestern*, the pipeline proposed to charge its shippers for gas cost balances based on a tariff formula that took into consideration shipper nominations and contract entitlements.  This Court held that the pipeline having such a rate "formula" or rate "rule" in its tariff did not violate the filed rate doctrine.  *Transwestern*, 897 F.2d at 578.

In contrast, Kern River did not propose a rate formula or rate rule in its tariff.  Kern River's tariff provides for stated rates that are known with absolute certainty and do not require any formula or rule to compute.  The holding in *Transwestern* does not support FERC's decision to make the prospective Period One rates effective on December 17, 2009 because the rates were not known as of that date and required a new compliance filing to be determined.  The Court in *Transwestern* stated that, like in *Electrical District*, it was improper for FERC to "simply announce some formula and *later* reveal that the formula was to govern from the date of announcement[.]"  *Id*. (emphasis in original).

In *City of Anaheim v. FERC*, this Court elaborated on the holdings of *Transwestern* and *Electrical District*.  *City of Anaheim v. FERC*, 558 F.3d 521 (D.C. Cir. 2009).  This Court explained that, in *Electrical District*, it held that "FERC does not 'fix' a rate until the rate is numerically 'specified.'"  *Id*. at 524.  Then, it explained its holding in *Transwestern* that FERC can fix rates through a rate formula "so long as purchasers can supply their own inputs to the formula and

thereby know the numerical rates." *Id*. In Opinion No. 486-C, FERC only set out the guidelines for Kern River to recalculate the rates in the subsequent compliance filing. FERC did not establish the actual rates or a formula whereby Kern River's shippers could supply their own inputs to determine the rate. No party knew the resulting prospective Period One rates until Kern River reran all of the levelized rate models. This Court's precedent, as reflected in these cases, prohibits FERC from making the prospective Period One rates effective as of December 17, 2009 when no rates were fixed at that time.

In Opinion No. 486-D, FERC stated that it was not reasonable to wait to make the prospective Period One rates effective based on the subsequent compliance filing. Opinion No. 486-D at P 30, R. 1280, JA __. Otherwise, FERC claimed it "would give the pipeline an improper incentive to delay resolution of the proceeding as long as possible by never getting its compliance filing quite right." *Id.* In *Williston Basin Interstate Pipeline Company,* FERC explained that "to require the effective date of [an NGA] section 5 action to be deferred until the very last word has been spoken in response to arguments made by the company would seriously weaken, if not destroy, the Commission's power to act under [NGA] section 5." *Williston Basin Interstate Pipeline Co.,* 69 FERC ¶ 61,360 at 62,363 (1994).

By referring to a pipeline not getting its compliance filing right, FERC appears to be alluding to its earlier statements in Opinion No. 486-C alleging that Kern River improperly changed the cost allocation in the March 2, 2009 Compliance Filing.  However, FERC admitted that it misunderstood Kern River's March 2, 2009 Compliance Filing and erroneously criticized Kern River's cost allocation.  Opinion No. 486-D at P 78, R. 1280, JA __.  Accordingly, the *Williston Basin* line of argument is wholly irrelevant and does not in any way support FERC's erroneous holding that Kern River's March 2, 2009 Compliance Filing established fixed, prospective just and reasonable rates.

FERC's fears of a pipeline affirmatively seeking to delay resolution of rates are not at issue in these proceedings.  After Kern River used the billing determinants of 624,416 decatherms for cost allocation in five filings (including the original rate case filing), FERC did not find this to be unjust or unreasonable until Opinion No. 486-C.  Kern River's January 29, 2010 compliance filing set out the recalculated rates based on FERC's new rulings in Opinion No. 486-C.  FERC accepted the January 29, 2010 compliance filing without condition nearly ten months later in Opinion No. 486-D.  In no way did FERC claim or imply in Opinion No. 486-D that Kern River was improperly using the compliance filing procedures to delay implementation of the prospective Period One rates.  In addition, FERC could have acted on Kern River's January 29, 2010 compliance

30

filing immediately, rather than delaying for a period of ten months for the issuance of Opinion No. 486-D.

If FERC has a fear that pipelines in other proceedings will try to game the system by filing improper compliance filings, then FERC can, as suggested by this Court, simply fix the rate itself in an order and not require a compliance filing. A desire to prevent improper delays in the effectiveness of rates does not support FERC ignoring the requirement in NGA section 5 that new rates must be fixed.

Lastly, FERC discounted Kern River's argument on this issue because "no shippers allege any harm[.]" *Id*. at P 27, JA __. FERC engaged in conjecture when it stated that "the effective date set by the Commission benefits shippers, which may explain why Kern River is the only party that objects to the decision" to make the prospective Period One rates effective as of the date of Opinion No. 486-C. *Id*. FERC's desire to protect shippers at Kern River's expense does not give it carte blanche authority to ignore the requirements of NGA section 5 and this Court's precedent.

**2.      This Court Should Find That The Prospective Period One Rates Are Effective As Of November 18, 2010, The Date Of Issuance Of Opinion No. 486-D**

As demonstrated above, FERC's decision to make the prospective Period One rates effective as of December 17, 2009, was arbitrary, capricious, an abuse of discretion, and not in accordance with law.  To remedy this clear violation of NGA section 5, this Court should act consistent with its prior precedent and find that the Period One rates are effective as of November 18, 2010, the date on which FERC fixed the prospective Period One rates by accepting Kern River's January 29, 2010 compliance filing required by Opinion No. 486-C.  *See* Opinion No. 486-D at Ordering Paragraph (B), R. 1280, JA __.

C.    **FERC ERRED BY NOT ALLOWING KERN RIVER TO RESTATE THE PERIOD ONE RATES FOR THE ROLLED-IN 15-YEAR SHIPPERS WHEN THE 10-YEAR 2002 EXPANSION SHIPPERS STEPPED DOWN FROM PERIOD ONE RATES TO THE LOWER PERIOD TWO RATES**

1.    **FERC's Complete Failure To Address Kern River's Request For Rehearing On This Issue Is Arbitrary, Capricious, An Abuse Of Discretion, And Not In Accordance With Law**

FERC violated the Administrative Procedure Act when it ignored Kern River's request for rehearing on the issue of the Rolled-In Rate Credit for the transition from Period One to Period Two rates. This failure requires remand to FERC for consideration of Kern River's objections to Opinion No. 486-E set out in its request for rehearing.

a.    **FERC Must Address Objections Raised**

An agency's actions are arbitrary or capricious when, among other things, the agency has "failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. In other words, "[a]n agency's 'failure to respond meaningfully' to objections raised by a party renders its decision arbitrary and capricious.'" *PSEG Energy Res. & Trade LLC v. FERC*, 665 F.3d 203, 208 (D.C. Cir. 2011) ("*PSEG*") (*quoting PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005), *in turn quoting Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299 (D.C. Cir. 2001)). "Unless the [agency] answers objections that on their face seem legitimate, its decision can hardly be

classified as reasoned." *Id.* at 209 (citations omitted). FERC "must respond to objections . . . in more than a cursory fashion." *Transmission Agency of N. Cal. v. FERC*, 628 F.3d 538, 543-44 (D.C. Cir. 2010). When FERC "failed to provide an adequate response to [a petitioner's] argument," let alone "failed to take seriously its responsibility to respond at all[,]" then FERC's "dismissive treatment" of a petitioner's objection cannot be the "product of a reasoned decisionmaking process." *NorAm Gas Transmission Co. v. FERC*, 148 F.3d 1158, 1165 (D.C. Cir. 1998).

This Court has applied these principles in numerous orders and found that FERC's failure to respond meaningfully to objections raised in rehearing requests is arbitrary and capricious. For example, in *PSEG*, this Court examined two objections raised by the petitioner in its request for rehearing and the adequacy of FERC's responses thereto in its order on rehearing. This Court concluded that because "these are 'objections that on their face seem legitimate,' the Commission was required to answer them." 665 F.3d at 210 (*quoting PPL Wallingford Energy LLC*, 419 F.3d at 1198). This Court found that FERC "noted the [petitioner's] objections and—without more—characterized them" in its rehearing order, but found that "[t]o characterize objections . . . is not to answer them." *Id.* at 210. In response to FERC's argument that it had responded to the petitioner by quoting a footnote from the rehearing order, this Court held that "the order [on rehearing]

34

does nothing more than make the quoted statement; it does not suggest that—let alone explain how—it was a response to [the petitioner's] arguments." *Id*. This Court remanded the case to FERC for further proceedings. *Id*.

Likewise, in *Canadian Association of Petroleum Producers v. FERC*, the petitioners set forth an alternative proposal regarding the calculation of the rate of return. 254 F.3d at 298. FERC's orders, however, did not discuss this alternative proposal. *Id*. This Court found that FERC's order was deficient because FERC "simply dismissed the alternative proposal in conclusory terms." *Id*. at 299. This Court concluded that FERC's "failure to respond meaningfully" to the petitioners' alternative proposal "renders its decision . . . arbitrary and capricious" because "[u]nless the Commission answers objections that on their face seem legitimate, its decision can hardly be classified as reasoned." *Id.* (citations omitted). This Court reversed and remanded the case to FERC for reconsideration. *Id*.

### b.    FERC Completely Ignored Kern River's Objection

FERC utterly failed to acknowledge, let alone address, Kern River's request for rehearing on the issue of the Rolled-In Rate Credit for the transition from Period One to Period Two rates.

FERC stated in Opinion No. 486-D that it would consider "circumstances unique to the transition from Period One to Period Two rates that justify an adjustment to the cost of service underlying the Period One rates." Opinion No.

35

486-D at P 194, R. 1280, JA __.  Kern River filed the following testimony and exhibits in the hearing proceeding ordered by FERC in Opinion No. 486-C on the issue of the Rolled-In Rate Credit for the transition from Period One to Period Two rates:

- o Prepared Opening Testimony of Timothy N. Kissner, which, in part, described the Rolled-In Rate Credit and the rationale for adjusting Period One rates, and an exhibit thereto that showed Kern River's calculation of the Rolled-In Rate Credit and proposed adjustments to Period One rates.  R. 1410 at 10:8 – 12:2, JA __; R. 1411 at 9, JA __.

- o Prepared Rebuttal Testimony of Mary Kay Miller, which, in part, responded to criticism raised in shipper testimony opposing Kern River's proposed adjustments to Period One rates.  R. 1432 at 21:12 – 23:7, JA __.

On November 29, 2010, Kern River filed its list of disputed issues for the hearing, which included Disputed Issue H: "Should Period One rates be adjusted to account for reduction in 2002 Expansion roll-in credit due to Period Two step-down rates?"  R. 1374 at 8-10, JA __.  In the 2011 Initial Decision, the Administrative Law Judge found, without explanation, that Disputed Issue H was not part of the proceeding.  2011 Initial Decision at P 346, R. 1796, JA __.

36

In its Brief on Exceptions to the 2011 Initial Decision, Kern River argued that the 2011 Initial Decision's "finding that this issue was not included in the Period Two hearing cannot be reconciled with the Commission's ruling in Opinion No. 486-D that issues related to the transition from Period One to Period Two rates are within the scope of the present proceeding."  R. 1803 at 11.

On July 21, 2011, FERC issued Opinion No. 486-E affirming the 2011 Initial Decision on various issues.  Opinion No. 486-E, R. 1818, JA __.  FERC stated that "[i]n Opinion No. 486 and the subsequent four orders in the Opinion No. 486 series, the Commission has finally resolved all issues concerning Kern River's Period One rates[.]"  *Id*. at P 8, JA __.  FERC completely ignored Kern River's arguments on the disputed issue of the Rolled-In Rate Credit for the transition from Period One to Period Two rates.  On August 22, 2011, Kern River filed a request for rehearing of Opinion No. 486-E regarding this issue.  R. 1857 at 50-52.

As it did in Opinion No. 486-E, FERC stated in Opinion No. 486-F that "[i]n Opinion No. 486 and the subsequent four orders in the Opinion No. 486 series, FERC resolved all issues concerning Kern River's Period One rates."  Opinion No. 486-F at P 8, R. 1875, JA __.  Again, FERC completely ignored Kern River's arguments on this issue.

37

FERC's mere statement in Opinion Nos. 486-E and 486-F that the Period One rates were finalized in Opinion No. 486 and the subsequent four orders is not sufficient to satisfy the reasoned decisionmaking standard of the Administrative Procedure Act.  Kern River specifically listed this issue in its request for rehearing of Opinion No. 486-E and argued the issue at length.  FERC did not respond in any manner to Kern River's presentation of "circumstances unique to the transition" that would justify the adjustment.  FERC is required to "respond to objections . . . in more than a cursory fashion," yet FERC failed to provide even a cursory acknowledgement of Kern River's arguments.  *See Transmission Agency of N. Cal.*, 628 F.3d at 543-44.

FERC's complete failure to address Kern River's arguments on this issue is arbitrary, capricious, an abuse of discretion, and not in accordance with law.  Consistent with the above-described precedent, this Court should issue an order remanding this issue to FERC for further proceedings to consider the Rolled-In Rate Credit for Period One.

> **2.    FERC Erred By Failing To Permit Kern River To Adjust The Period One Rolled-In Rate Credit For The Rolled-In 15-Year Shippers**

FERC committed reversible error when it failed to permit Kern River to adjust the Rolled-In Rate Credit for Period One.  When the 10-year 2002 Expansion Shippers stepped down from Period One rates to the lower Period Two

rates in 2012, the revenues that Kern River receives from the 2002 Expansion Shippers decreased, and the Period One Rolled-In Rate Credit for the rolled-in 15-year shippers should have been adjusted. This adjustment is required to allow Kern River an opportunity to recover its Period One costs.

Under Kern River's FERC-approved roll-in methodology, there are four groups of rolled-in shippers:

1. Original System Shippers with 10-year contracts;

2. 2002 Expansion Shippers with 10-year contracts;

3. Original System Shippers with 15-year contracts; and

4. 2002 Expansion Shippers with 15-year contracts.

The Original System Shippers with 10-year contracts stepped down from Period One rates to the lower Period Two rates when their contracts expired on September 30, 2011. Next, the 2002 Expansion Shippers with 10-year contracts stepped down from Period One rates to the lower Period Two rates when their contracts expired on April 30, 2012.

The remaining two groups (the Original System Shippers with 15-year contracts and the 2002 Expansion Shippers with 15-year contracts) are still paying Period One rates and have not stepped down to the lower Period Two rates. The contracts for the 15-year Original System Shippers expire on September 30, 2016, while the contracts for the 15-year 2002 Expansion Shippers expire on April 30,

39

2017.  When the 15-year 2002 Expansion Shippers step down to the lower Period Two rates in 2017, there will be no other rolled-in shippers paying Period One rates.

Kern River has consistently utilized the same roll-in methodology that FERC approved in the 2002 Expansion proceeding, which includes the Rolled-In Rate Credit.  The calculation of the Rolled-In Rate Credit for Period One or Period Two has three main components: (1) the revenues Kern River receives from the 2002 Expansion Shippers (which depends upon the rate charged to such shippers), (2) the 2002 Expansion cost of service, and (3) the throughput of the rolled-in shippers.

The Rolled-In Rate Credit, therefore, is analogous to a three-legged stool.  Changing any one of these three components, or legs of the stool, impacts the calculation of the Rolled-In Rate Credit for Period One or Period Two.  Thus, when the 10-year 2002 Expansion Shippers stepped down in 2012, the revenues Kern River receives from the 2002 Expansion Shippers decreased because the 10-year 2002 Expansion Shippers began paying Period Two rates, which are lower than the Period One rates.  Accordingly, in order for Kern River to be kept whole (and the three-legged stool to stand), FERC should have, as requested by Kern River, adjusted the Rolled-In Rate Credit for Period One as it applied to the rolled-in shippers that were still paying Period One rates (i.e., the 15-year Original

40

System Shippers and the 15-year 2002 Expansion Shippers).[2]  FERC's failure to make this adjustment resulted in Kern River not having an opportunity to fully recover its Period One costs.

It is a basic principle of ratemaking that a pipeline must not be barred from an opportunity to recover its prudently-incurred costs.  *See FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 603 (1944) ("*Hope*"); *FPC v. Natural Gas Pipeline Co. of Am.*, 315 U.S. 575, 585-86 (1942); *Transcontinental Gas Pipe Line Corp. v. FPC*, 518 F.2d 459, 464-65 (D.C. Cir. 1975).  Such a bar to the recovery of costs would violate the Fifth Amendment's just compensation or takings clause as the resulting rates would be "so 'unjust' as to be confiscatory."  *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 307 (1989) ("The guiding principle has been that the Constitution protects utilities from being limited to a charge for their property serving the public which is so 'unjust' as to be confiscatory."); *see* U.S. CONST. amend. V ("nor shall private property be taken for public use, without just compensation"); *see also In re Permian Basin Area Rate Cases*, 390 U.S. 747, 770 (1968); *FPC v. Natural Gas Pipeline Co. of Am.*, 315 U.S. at 582.

---

[2] Although the Rolled-In Rate Credit is applicable to the 10-year Original System Shippers, this shipper group is not affected by Kern River's proposed adjustment to the Rolled-In Rate Credit for Period One because this shipper group stepped down to Period Two rates prior to April 30, 2012, the date the 10-year 2002 Expansion Shippers stepped down to Period Two rates.

In instances where FERC has mandated a rate design change, it has permitted rate adjustments to allow a pipeline the opportunity to recover its costs. For example, in Order No. 636-A, FERC stated that "when the Commission orders a pipeline to implement a different rate design method that requires reductions in one component of the pipeline's rates, it must permit the pipeline to implement offsetting increases in some other component simultaneously in order for the pipeline to recover its cost of service[.]" *Pipeline Service Obligations and Revisions to Regulations Governing Self-Implementing Transportation Under Part 384 of the Commission's Regulations, Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol and Order Denying Rehearing in Part, Granting Rehearing in Part, and Clarifying Order No. 636*, Order No. 636-A, 57 Fed. Reg. 36128 (Aug. 12, 1992), FERC Statutes and Regulations ¶ 30,950 at 30,667 (Aug. 3, 1992) (*citing ANR Pipeline Co. v. FERC*, 863 F.2d 959 (D.C. Cir. 1988)); *see also ANR Pipeline Co.*, 48 FERC ¶ 61,004 at 60,010 (1989).

FERC's failure to allow, let alone address, Kern River's proposal to adjust the Rolled-In Rate Credit is plainly inconsistent with precedent and not in accordance with law. FERC has denied Kern River the opportunity to recover its prudently-incurred costs by failing to order adjustments to the Period One rates to account for the lower Period Two rates.

42

FERC established the hearing proceeding regarding the Period Two rates in Opinion No. 486-C.  Subsequently, in Opinion No. 486-D, FERC stated that it would consider "circumstances unique to the transition from Period One to Period Two rates that justify an adjustment to the cost of service underlying the Period One rates."  Opinion No. 486-D at P 194, R. 1280, JA __.  In response, Kern River filed testimony and an exhibit in the hearing on the issue of the Rolled-In Rate Credit for the transition from Period One to Period Two rates.  R. 1410, JA __; R. 1411, JA __.  Kern River has repeatedly argued that the Rolled-In Rate Credit for Period One is a circumstance unique to the transition and must be considered by FERC.

To have an opportunity to recover its costs as permitted by *Hope*, 320 U.S. at 603, the Rolled-In Rate Credit for Period One must be adjusted to reflect the decreased revenues Kern River receives from the 10-year 2002 Expansion Shippers as a result of the lower FERC-established Period Two rates.

Despite FERC's failure to address or even acknowledge Kern River's arguments with respect to Period One, FERC found in Opinion No. 486-F that the Rolled-In Rate Credit is a transitional matter and ordered rate adjustments to Period Two rates only.  Opinion No. 486-F at P 349, R. 1875, JA __.  In Opinion No. 486-F, FERC allowed Kern River to revise its Period Two rolled-in rates to

account for the reduction in the Rolled-In Rate Credit when shippers step down to

the lower Period Two rates.  *Id*.  FERC stated:

> Because the credit declines as the 2002 Expansion
> Project shippers enter into their lower Period Two rates,
> this requires that the Period Two rates for the Original
> System shippers recover increased costs which would
> require that the Period Two rates for such Original
> Shippers should be increased as a direct result of the
> transition of the 2002 Expansion Project shippers from
> Period One rates to Period Two rates.

*Id.*

By allowing Kern River to adjust its Period Two rates, FERC demonstrated

that it is fully aware of the interplay between the revenues Kern River receives

from the 2002 Expansion Shippers, the Rolled-In Rate Credit, and the

transportation rates paid by the Original System Shippers.  Despite this awareness,

and in contrast to its approval of the adjustments to the Rolled-In Rate Credit for

Period Two, FERC completely ignored Kern River's request to revise its Period

One rates.

FERC should have permitted Kern River the opportunity to recover its

Period One costs by ordering adjustments to the Period One rates in the same

manner as it permitted adjustments to the Period Two rates.  FERC has provided

absolutely no justification for treating this issue differently for Period One versus

Period Two.  As required by FERC, Kern River currently provides a Period One

Rolled-In Rate Credit that was not adjusted to reflect the lower annual revenues

44

that resulted from the lower Period Two rates.  By failing to permit Kern River to restate the Period One rates by adjusting the Rolled-In Rate Credit, FERC has denied Kern River the opportunity to recover all of its Period One costs in violation of *Hope*, 320 U.S. at 603.

## CONCLUSION

In violation of 5 U.S.C. § 706(2)(A), FERC acted in a manner that was arbitrary, capricious, an abuse of discretion, and not in accordance with law. Accordingly, for the reasons stated herein, Kern River Gas Transmission Company respectfully requests that this Court (i) find that the Period One rates are effective as of November 18, 2010; and (ii) reverse FERC's decision in Opinion Nos. 486-E and 486-F in order to allow Kern River to recover its prudently-incurred Period One costs.

Respectfully submitted,

/s/ James F. Moriarty

J. Gregory Porter
Vice President and General Counsel
Darla S. Zink
Senior Counsel
Kern River Gas Transmission
Company
2755 E. Cottonwood Parkway
Suite 300
Salt Lake City, UT 84121
(402) 398-7248
greg.porter@nngco.com
darla.zink@nngco.com

James F. Moriarty
Thomas E. Knight
Jennifer Brough
Matthew T. Eggerding
LOCKE LORD LLP
701 8th Street NW, Suite 700
Washington, DC 20001
(202) 220-6915
jmoriarty@lockelord.com
tknight@lockelord.com
jbrough@lockelord.com
meggerding@lockelord.com

*Counsel for Petitioner Kern River Gas Transmission Company*

June 27, 2014

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C) and D.C. Cir. Rule 32(a), I hereby certify, that the foregoing brief contains 9,451 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Cir. Rule 32(a)(1).

/s/ Matthew T. Eggerding
Matthew T. Eggerding

Dated: June 27, 2014

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. App. P. 25 and the Circuit Rules, I hereby certify that I

have this 27th day of June 2014 served a copy of the foregoing document

electronically through the Court's CM/ECF system on all registered counsel and by

U.S. mail on:

        Mr. Frederick T. Kolb
        BP Energy Company
        Helios Plaza
        201 Helios Way
        Houston, TX 77079

        Mr. William Michael Rappolt
        Andrews Kurth LLP
        1350 I Street, NW
        Suite 1100
        Washington, DC 20005

                         /s/ Matthew T. Eggerding
                         Matthew T. Eggerding

## <u>APPENDIX</u>

## ADDENDUM OF STATUTES AND REGULATIONS

**U.S. CONST. amend. V**

**Administrative Procedure Act**

    5 U.S.C. § 706 (2006)

**Natural Gas Act**

    15 U.S.C. § 717c (2006)

    15 U.S.C. § 717d (2006)

    15 U.S.C. § 717r(b) (2006)

**Code of Federal Regulations**

    18 C.F.R. § 154.203(b) (2014)

## U.S. CONST. amend. V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## Administrative Procedure Act, 5 U.S.C. § 706 (2006)

### Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall-

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be-

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## Natural Gas Act, Section 4, 15 U.S.C. § 717c (2006)

**Rates and charges**

(a) Just and reasonable rates and charges

All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges, shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful.

(b) Undue preferences and unreasonable rates and charges prohibited

No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

(c) Filing of rates and charges with Commission; public inspection of schedules

Under such rules and regulations as the Commission may prescribe, every natural-gas company shall file with the Commission, within such time (not less than sixty days from June 21, 1938) and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection, schedules showing all rates and charges for any transportation or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

(d) Changes in rates and charges; notice to Commission

Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

(e) Authority of Commission to hold hearings concerning new schedule of rates

Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, State commission, or gas distributing company, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its

decision found not justified. At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the natural-gas company, and the Commission shall give to the hearing and decision of such questions preference over other questions pending before it and decide the same as speedily as possible.

(f) Storage services

(1) In exercising its authority under this chapter or the Natural Gas Policy Act of 1978 (15 U.S.C. 3301 et seq.), the Commission may authorize a natural gas company (or any person that will be a natural gas company on completion of any proposed construction) to provide storage and storage-related services at market-based rates for new storage capacity related to a specific facility placed in service after August 8, 2005, notwithstanding the fact that the company is unable to demonstrate that the company lacks market power, if the Commission determines that-

(A) market-based rates are in the public interest and necessary to encourage the construction of the storage capacity in the area needing storage services; and

(B) customers are adequately protected.

(2) The Commission shall ensure that reasonable terms and conditions are in place to protect consumers.

(3) If the Commission authorizes a natural gas company to charge market-based rates under this subsection, the Commission shall review periodically whether the market-based rate is just, reasonable, and not unduly discriminatory or preferential.


## Natural Gas Act, Section 5, 15 U.S.C. § 717d (2006)

**Fixing rates and charges; determination of cost of production or transportation**

(a) Decreases in rates

Whenever the Commission, after a hearing had upon its own motion or upon complaint of any State, municipality, State commission, or gas distributing

company, shall find that any rate, charge, or classification demanded, observed, charged, or collected by any natural-gas company in connection with any transportation or sale of natural gas, subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order: *Provided, however*, That the Commission shall have no power to order any increase in any rate contained in the currently effective schedule of such natural gas company on file with the Commission, unless such increase is in accordance with a new schedule filed by such natural gas company; but the Commission may order a decrease where existing rates are unjust, unduly discriminatory, preferential, otherwise unlawful, or are not the lowest reasonable rates.

(b) Costs of production and transportation

The Commission upon its own motion, or upon the request of any State commission, whenever it can do so without prejudice to the efficient and proper conduct of its affairs, may investigate and determine the cost of the production or transportation of natural gas by a natural-gas company in cases where the Commission has no authority to establish a rate governing the transportation or sale of such natural gas.

## Natural Gas Act, Section 19, 15 U.S.C. § 717r (2006)

## Rehearing and review

(a) Application for rehearing; time

Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed

to have been denied. No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b) of this section, the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

(b) Review of Commission order

Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings, which is supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or

setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28.

(c) Stay of Commission order

The filing of an application for rehearing under subsection (a) of this section shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under subsection (b) of this section shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

(d) Judicial review

(1) In general

The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.).

(2) Agency delay

The United States Court of Appeals for the District of Columbia shall have original and exclusive jurisdiction over any civil action for the review of an alleged failure to act by a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.), for a facility subject to section 717b of this title or section 717f of this title. The failure of an agency to take action on a permit required under Federal law, other than the Coastal Zone Management Act of 1972, in accordance with the Commission schedule established pursuant to section 717n(c) of this title shall be

considered inconsistent with Federal law for the purposes of paragraph (3).

(3) Court action

If the Court finds that such order or action is inconsistent with the Federal law governing such permit and would prevent the construction, expansion, or operation of the facility subject to section 717b of this title or section 717f of this title, the Court shall remand the proceeding to the agency to take appropriate action consistent with the order of the Court. If the Court remands the order or action to the Federal or State agency, the Court shall set a reasonable schedule and deadline for the agency to act on remand.

(4) Commission action

For any action described in this subsection, the Commission shall file with the Court the consolidated record of such order or action to which the appeal hereunder relates.

(5) Expedited review

The Court shall set any action brought under this subsection for expedited consideration.

## Code of Federal Regulations, 18 C.F.R. § 154.203 (2014)

**Compliance filings.**

(a) In addition to the requirements of subparts A, B, and C of this part, filings made to comply with orders issued by the Commission, including those issued under delegated authority, must contain the following:

(1) A list of the directives with which the company is complying;

(2) Revised workpapers, data, or summaries with cross-references to the originally filed workpapers, data, or summaries;

(b) Filings made to comply with Commission orders must include only those changes required to comply with the order. Such compliance filings may not be combined with other rate or tariff change filings. A compliance filing that includes other changes or that does not comply with the applicable order in every respect may be rejected.